## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| MAHER ARIF, BRAD ELLISH, BATMADAKH CHOIJIN and DAGVADOR BAYARSAIHAN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No.   4:24-cv-4044<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Maher Arif, Brad Ellish, Batmadakh Choijin and Dagvador Bayarsaihan (collectively, "Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Defendant Wells Fargo Bank, National Association ("Wells Fargo" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.      When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have a practical opportunity to avoid the fee.

2.      Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes

a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3.      On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the check recipient a fee for returning the check.

4.      Nevertheless, this is exactly what Wells Fargo did through what it refers to as "Deposited Item Return Unpaid Fees." By charging these Fees, Wells Fargo unfairly targeted its customers with financial penalties for faulty checks the customers had no hand in issuing. Plaintiffs were shocked when they were charged these Fees because they did nothing wrong, yet were penalized by Wells Fargo. There was nothing Plaintiffs could do to avoid — or even anticipate — a Deposited Item Return Unpaid Fee assessed by Wells Fargo at the time the deposit was returned.

5.      By charging its customers significant fees in situations where the customer did nothing wrong and could not have avoided the fee through reasonable diligence, Wells Fargo acted in a manner that is unfair, oppressive, and against public policy.

6.      Wells Fargo is a "repeat offender" when it comes to "junk fees." In late 2022, the Consumer Financial Protection Bureau ("CFPB") ordered Defendant to stop charging surprise overdraft fees when consumers had sufficient funds.[1] This practice, deemed "contrary to reasonable expectations" of consumers, arises from authorized-positive overdraft fees assessed after transactions, leaving customers unaware and unexpecting "***who can neither reasonably***

---

[1] CFPB Orders Wells Fargo to Pay $3.7 Billion for Widespread Mismanagement of Auto Loans, Mortgages, and Deposit Accounts (Dec. 20, 2022). Available at: https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-wells-fargo-to-pay-37-billion-for-widespread-mismanagement-of-auto-loans-mortgages-and-deposit-accounts/ (last accessed January 25, 2024); *see also In the matter of: Wells Fargo Bank, N.A.,* Consent Order, 2022-CFPB-0011. Available at: https://files.consumerfinance.gov/f/documents/cfpb_wells-fargo-na-2022_consent-order_2022-12.pdf (last accessed Jan. 25, 2024).

*anticipate nor take steps to avoid them*."[2] Director Chopra, citing Wells Fargo's past offenses, emphasized Defendant's persistent pattern of unfair practices.

7.     Recent guidance from the CFPB has reaffirmed the unlawful nature of Wells Fargo's Deposited Item Return Unpaid Fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Deposited Item Return Fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these fees cause substantial monetary injury for each returned item, which consumers likely cannot reasonably avoid because they lack information about and control over whether a check will clear.[3]

8.     California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17200, *et seq*., to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[4]

9.     Accordingly, Plaintiffs, on behalf of themselves and the Class and Sub-classes (defined below), now seek to hold Wells Fargo accountable for its unlawful and unfair policy, and seek damages, restitution, and injunctive relief, as set forth below.

---

[2] *Id.* (emphasis added).

[3] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed January 17, 2024).

[4] Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), available at: https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-feescalifornia-signed-law (last accessed January 17, 2024).

## PARTIES

10.     Plaintiff Maher Arif is, and at all times mentioned herein was, an individual citizen of the State of New Jersey residing in the County of Hudson and held a Wells Fargo Everyday Checking account during the applicable statute of limitations period. Mr. Arif opened his Wells Fargo account in or around 2016 in New Jersey. His account is, therefore, located in New Jersey.

11.     Plaintiff Brad Ellish is, and at all times mentioned herein was, an individual citizen of the State of Nevada residing in the County of Clark and held a Wells Fargo Everyday Checking account during the applicable statute of limitations period. Mr. Ellish opened his Wells Fargo account in or around 2020 in Las Vegas, Nevada. His account is, therefore, located in Nevada.

12.     Plaintiffs Batmadakh Choijin and Dagvador Bayarsaihan are, and at all times mentioned herein were, individual citizens of the State of California residing in the County of Sacramento and held a joint Wells Fargo Everyday Checking account during the applicable statute of limitations period. Ms. Choijin and Mr. Bayarsaihan opened their Wells Fargo account in or around 2002 in California. Their account is, therefore, located in California.

13.     Defendant Wells Fargo Bank is a national bank headquartered in Sioux Falls, South Dakota. As of December 31, 2022, Wells Fargo had $1.7 trillion in assets and is the fourth largest bank holding company in the U.S.[5] As of December 31, 2022, Defendant realized nearly $3.1 billion in revenue for deposit-related fees.[6] Wells Fargo is engaged in the business of providing retail banking services to consumers and businesses, including Plaintiffs and members of the putative Class and Sub-classes, which includes the issuance of checking accounts. Defendant

---

[5]     *See* Form 10-K for Wells Fargo & Co. (2022) at 1. Available at: https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2022/10k.pdf (last accessed February 6, 2024).

[6]     *See* Exhibit 13 to Form 10-K at 171. Available at: https://www08.wellsfargomedia.com/assets/pdf/about/investor-relations/sec-filings/2022/exhibit-13.pdf (last accessed February 6, 2024).

operates banking centers, and thus conducts business, throughout the States of New Jersey, Nevada, and California among others.

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15.     This Court has jurisdiction over Defendant because it operates in this District, is headquartered in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I.     DEPOSITED ITEM RETURN FEES

17.     Deposited Item Return Fees are levied when a check is returned because it cannot be processed against the originator's account. In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear. There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself. Even though the depositor has no control over the check, the Deposited Item Return Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

18.     Deposited Item Return Fees are widespread within the banking industry, with most major banks and financial institutions levying them as part of their standard fee structure. In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

19.     Recognizing the potential for abuse, the CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin").[7]  The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Deposited Item Return Fees, particularly in instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

20.     The CFPB deemed these fees unfair under the Consumer Financial Protection Act. It took issue with financial institutions, like Wells Fargo, that charge consumers Returned Item Fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."

> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.

> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks**

---

[7]  The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed February 6, 2024).

> **impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 FR 66940, 66941 (emphases added).

21.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id.* The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II.     WELLS FARGO IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

22.     Wells Fargo operates a vast retail network across the country. Within this network, Wells Fargo offers a diverse range of deposit accounts, including a range of different checking and savings options, to customers like Plaintiffs and the putative Class and Sub-class members.

23.     In connection with opening a deposit account with Wells Fargo, each customer receives a comprehensive "Deposit Account Agreement" ("Deposit Agreement"). This Agreement governs the terms and conditions of each deposit account held with Wells Fargo.

24.     The Deposit Agreement establishes that a customer's account is located in the state where the person applied. However, if a customer applied for an account online, and Wells Fargo had an address on record in a state where it had a branch at the time of the application, the account is "located" in the state of the address on record with Wells Fargo.[8]

25.     While the Deposit Agreement confirms that Wells Fargo had a blanket policy of charging a Deposited Item Return Unpaid Fee on attempted deposits that were returned unpaid, regardless of the underlying facts or circumstances,[9] it does not disclose the amount of any fee that Wells Fargo would charge for returned deposited items.

26.     The Deposit Agreement states that "[i]f an item you deposited or cashed is returned to us unpaid, we can deduct the amount from any account you have with us . . . In addition, we'll charge you all applicable fees."[10]

27.     The Deposit Agreement states that it applies along with the "Consumer Schedule," which provides an overview of the fees associated with Wells Fargo accounts. The "Consumer Account Fees and Information Schedule" states, in relevant part, that "deposited item returned unpaid for any reason" has a "$0" per item fee.[11]

28.     The Consumer Schedule, aimed at providing fee clarity, explicitly states a "$0" fee for deposited items returned unpaid for any reason.

---

[8] *See* Wells Fargo Deposit Agreement, effective July 25, 2023, Additional Terms and Services, Laws governing your account, at 38, attached hereto as Exhibit A.

[9] *Id.*, Cashed/Deposited items returned unpaid, at 6.

[10] *See id.*, Cashed/Deposited items returned unpaid, at 6.

[11] *See* Wells Fargo Consumer Account Fees and Information, effective July 25, 2023, Service Fees, at 11, attached hereto as Exhibit B.

29.     A consumer cannot reasonably expect to be charged a fee for a Deposited Item Return Unpaid Fee where that fee is not disclosed in the Deposit Agreement and accompanying Consumer Schedule.

30.     While nowhere disclosed, in practice Wells Fargo uniformly charged its customers a blanket $12 fee for items that are returned by no fault of the customer.

31.     While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

32.     Consumers attempting to deposit funds, such as Plaintiffs, lacked any control over whether the deposit would be returned, and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

33.     Wells Fargo's blanket policy of charging Deposited Item Return Unpaid fees on all returned deposits, regardless of the origin of the check or the cause of its return, is unfair because it penalizes consumers for circumstances outside of their control.

III.    **WELLS FARGO CHARGED PLAINTIFFS DEPOSITED ITEM RETURN FEES**

A.   **Plaintiff Maher Arif**

34.     On or around 2016, Plaintiff Maher Arif opened a Wells Fargo Everyday Checking account in or around Jersey City, New Jersey.

35.     Mr. Arif's Account was located in the State of New Jersey at the time he opened the account and remains so to this day.

36.     On or around April 6, 2022, Mr. Arif attempted to deposit a check into his Wells Fargo account.

37.     At the time he attempted to deposit the check into his Wells Fargo account, Mr. Arif had no reason to believe that the check would be returned unpaid.

38.     On or around April 6, 2022, to Mr. Arif's surprise and by no fault of his own, the check he deposited was returned unpaid. Wells Fargo charged Mr. Arif a Deposited Item Return Unpaid Fee of $12.00. The Deposited Item Return Fee was deducted from the balance of Mr. Arif's account.

39.     Because the $12 Deposited Item Return Unpaid Fee which Wells Fargo charged Mr. Arif was assessed pursuant to Wells Fargo's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding his attempt to deposit the check into his account, the Deposited Item Return Fee was unfair and unlawful.

40.     Furthermore, the $12 Deposited Item Return Unpaid fee was unfair and unlawful because, upon information and belief, the Deposit Agreement and Consumer Schedule failed to adequately disclose the amount of this fee.

### B.  Plaintiff Brad Ellish

41.     On or around 2018, Plaintiff Brad Ellish opened a Wells Fargo Everyday Checking account with Wells Fargo in or around Las Vegas, Nevada.

42.      Mr. Ellish's Wells Fargo account was located in the State of Nevada at the time he opened the account and remains so to this day.

43.     On or around October 20, 2021, Mr. Ellish attempted to deposit a check into his Wells Fargo account.

44.     At the time Mr. Ellish attempted to deposit the check into his Wells Fargo account, he had no reason to believe that the check would be returned unpaid.

45.     The same day, to Mr. Ellish's surprise and by no fault of his own, the check was returned unpaid. Wells Fargo charged Mr. Ellish a Deposited Item Return Unpaid Fee of $12.00. The Deposited Item Return Unpaid Fee was deducted from the balance of Mr. Ellish's account.

46.      Because the Deposited Item Return Unpaid Fee which Wells Fargo charged Mr. Ellish was assessed pursuant to Wells Fargo's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding his attempt to deposit the check into his account, the Deposited Item Return Unpaid Fee was unfair and unlawful.

47.     Furthermore, the $12 Deposited Item Return Unpaid fee was unfair and unlawful because, upon information and belief, the Deposit Agreement and Consumer Schedule failed to adequately disclose the amount of this fee.

### C.   Plaintiffs Batmadakh Choijin and Dagvador Bayarsaihan

48.     In or around 2002, Plaintiffs Batmadakh Choijin and Dagvador Bayarsaihan opened a joint Everyday Checking account with Wells Fargo in or around Carmichael, California.

49.     On or around March 12, 2020, Ms. Choijin attempted to deposit a check into her joint Wells Fargo account.

50.     At the time Ms. Choijin attempted to deposit the check into her Wells Fargo account, she had no reason to believe that the check would be returned unpaid.

51.     The same day, to Ms. Choijin's surprise and by no fault of her own, the check was returned unpaid. Wells Fargo charged Ms. Choijin and Mr. Bayarsaihan a Deposited Item Return Unpaid Fee of $12.00. The Deposited Item Return Unpaid Fee was deducted from the balance of their account.

52.     Because the Deposited Item Return Fee which Wells Fargo charged Ms. Choijin and Mr. Bayarsaihan was assessed pursuant to Wells Fargo's blanket policy of assessing such fees

irrespective of the facts and circumstances surrounding the attempt to deposit the check into their account, the Deposited Item Return Unpaid Fee was unfair and unlawful.

53.     Furthermore, the $12 Deposited Item Return fee was unfair and unlawful because, upon information and belief, the Deposit Agreement and Consumer Schedule failed to adequately disclose the amount of this fee.

<u>**CLASS DEFINITION AND ALLEGATIONS**</u>

54.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

55.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Wells Fargo and were charged a Deposited Item Return Fee by Wells Fargo.
>
> **New Jersey State Sub-class** (the "**New Jersey Sub-class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Wells Fargo located in New Jersey, and were charged a Deposited Item Return Fee by Wells Fargo.
>
> **Nevada State Sub-class** (the "**Nevada Sub-class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Wells Fargo located in Nevada, and were charged a Deposited Item Return Fee by Wells Fargo.
>
> **California State Sub-class** (the "**California Sub-class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Wells Fargo located in California, and were charged a Deposited Item Return Fee by Wells Fargo.

56.     Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

57.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class

and Sub-classes before the Court determines whether certification is appropriate.

58.    The proposed Class and Sub-classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

59.    **Numerosity**.  This action is appropriately suited for a class action. The members of the Class and Subclasses are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Sub-class contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

60.    **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

      a.  Whether Defendant's assessment of Deposited Item Return Unpaid Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

      b.  Whether Defendant breached the Deposit Agreement with Plaintiffs and the Class by charging an undisclosed Deposited Item Return Unpaid Fee;

      c.  Whether Defendant breached the covenant of good faith and fair dealing by charging Plaintiff and the Class an undisclosed Deposited Item Return Unpaid Fee;

      d.  Whether Defendant was unjustly enriched as a result of charging Plaintiffs and the Class the Deposited Item Return Unpaid Fee;

      e.  Whether Defendant's conduct, as alleged herein, constitutes a violation of New Jersey's Consumer Fraud Act, codified at N.J. Stat. Ann. § 56:8-1 *et seq*;

      f.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Nevada's Deceptive Trade Practices Act, codified at Nev. Rev. Stat. § 598.0903 *et seq*;

      g.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Civ. Code § 1750, *et seq*.;

      h.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Bus. & Prof. Code § 17200, *et seq*.;

      i.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

      j.  Whether Plaintiffs and the Class and Sub-class are entitled to declaratory and injunctive relief and the nature of that relief.

61.    **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Sub-classes, because, *inter alia*, all Class and Sub-class members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class and Sub-class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and their respective Sub-classes. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-classes.

62.    **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Sub-classes. Plaintiffs and the members of the Class and Subclasses each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Deposited Item Return Fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Sub-classes and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Sub-classes, and Defendant has no defenses unique to Plaintiffs.

63.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Sub-class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Sub-classes, on an individual basis, to obtain

effective redress for the wrongs done to him or her. Further, even if the Class or Sub-class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

64.    Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Sub-classes, and other equitable relief on grounds generally applicable to the entire Class and the Sub-classes, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class and Sub-classes are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class and Sub-classes will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class and Sub-classes and the general public may continue to be unfairly treated.

65.    Defendant has acted and refused to act on grounds generally applicable to the Class and the Sub-classes, making final injunctive relief appropriate with respect to the Class as a whole.

## COUNT I
## BREACH OF CONTRACT
### (On behalf of Plaintiffs and the Class)

66.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1-65 as if fully set forth herein.

67.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

68.    Plaintiff and each member of the Class entered into a uniform Deposit Agreement with Consumer Schedule with Defendant that governs the assessment of fees for certain banking

services. Neither the Consumer Schedule that forms part of the Deposit Agreement, nor the Deposit Agreement itself, states the amount of the fee that Defendant may assess for Deposited Item Return fees.

69.     Plaintiff and each member of the Class have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms of the Deposit Agreement, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

70.     Defendant breached the express terms of the Deposit Agreement by, inter alia, assessing Deposited Item Return fees because there was not authorization to charge these fees in the amount charged within the Deposit Agreement, and the fee amount was not an assented to term of the Deposit Agreement.

71.     As a result of Defendant's breach of the Deposit Agreement, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

<u>COUNT II</u>
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and the Class)**

72.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 – 71 as if fully set forth herein.

73.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

74.     Plaintiffs and each member of the Class entered into a uniform Deposit Agreement with Consumer Schedule with Defendant that governs the assessment of fees for certain banking services. Neither the Consumer Schedule, which forms part of the Deposit Agreement, nor the Deposit Agreement, state the amount of the fee that Defendant may assess for Deposited Item Returned Unpaid fees.

75.     A covenant of good faith and fair dealing is implied in Plaintiffs' and the members

16

of the Class's Deposit Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitutes examples of bad faith in the performance of the contracts.

76.     The material terms of the Deposit Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiffs and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure the rights and benefits under the contract of Plaintiffs and the members of the Class.

77.     Plaintiffs and the members of the Class have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

78.     As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiffs and the members of the Class Deposited Item Return Unpaid fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the depositor's attempt to deposit the check into their account.

79.     Defendant's actions to maximize its revenue from Deposited Item Return fees impedes the right of Plaintiffs and the members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced by the undisclosed fee.

80.     On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize

Defendant's revenue from Deposited Item Return Unpaid Fees at the expense of their customers, in contravention of Plaintiffs' and the members of the Class's reasonable expectations.

81.    Plaintiffs and the members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

82.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class)**
*(Plead in the alternative to Counts One and Two)*

83.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–82 as if fully set forth herein.

84.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

85.    Plaintiffs and members of the Class were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that Wells Fargo would not charge them unreasonable fees beyond their control. Plaintiffs and members of the Class suffered financial losses when they were charged Deposited Item Return Unpaid Fees in the form of funds deducted from their accounts.

86.    By charging Deposited Item Return Unpaid Fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $12 charge each time an item was returned, from each of their customers' accounts, regardless of their own action, without providing any additional service or value to their customers, including Plaintiffs and members of the Class. Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the customer, and failed to provide any manner to avoid these fees, making Defendant's retention unjust.

87.    By its wrongful acts and omissions described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

88.    Plaintiffs and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

89.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

90.    Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

91.    Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

92.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

**COUNT IV**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT,**
**N.J. STAT. ANN. § 56:8- 1 *ET SEQ.***
**(Plaintiff Arif on behalf of himself and the New Jersey Subclass)**

93.    Plaintiff Arif repeats and realleges each and every allegation contained in paragraphs 1–92 as if fully set forth herein.

94.    Plaintiff Arif brings this claim individually and on behalf of the members of the New Jersey Sub-class against Defendant.

95.    Plaintiff Arif is a "person" and a "consumer" pursuant to N.J.S.A. § 56:8-1(d), as he and all members of the Sub-class are natural persons as defined herein.

96.     Defendant is a "person" pursuant to N.J.S.A. § 56:8-1(d), as it is a business entity, corporation, or company as defined therein.

97.     Defendant engages in the sale of merchandise pursuant to N.J.S.A. §56:8-1(e).

98.     Plaintiff Arif maintained a Wells Fargo account located in New Jersey, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

99.     The New Jersey Consumer Fraud Act ("NJCFA") prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice;. . . ."  N.J.S.A.§ 56:8-2.

100.    Defendant unilaterally imposed such charges on Plaintiff Arif and all New Jersey Sub-class members and automatically debited their accounts accordingly.

101.    Defendant imposed unlawful fees on its customers in the form of Deposited Item Return Unpaid fees, which its customers could do nothing to avoid. There was no justification for imposing these blanket fees, which the CFPB has deemed "junk fees." By imposing these fees, which provided no service or product to its consumers, including Plaintiff Arif, Defendant engaged in an unconscionable commercial practice in violation of the CFA.

102.    Charging Deposited Item Return Fees disproportionately impacted vulnerable consumers, which is fundamentally unfair and exploits disadvantaged groups. These fees, imposed regardless of the actions of the account holder, provide no additional service. In addition, charging Deposited Item Return Unpaid fees is deceptive because consumers do not expect to be charged fees where they are not disclosed, and where the consumer has no control or fault.

103.    Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury

20

is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

104.    The CFPB — through Bulletin 2022-06 — has determined that Deposited Item Return Unpaid Fees, such as those charged by Wells Fargo, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

105.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Return Fees is deceptive and unfair and constitutes an unconscionable commercial practice in violation of the NJCFA.

106.    Defendant's unlawful acts caused Plaintiff Arif and the Sub-class to suffer an ascertainable loss. Specifically, Defendant's unlawful acts caused Plaintiff Arif and the New Jersey Sub-class to suffer an ascertainable loss of, including but not limited to, the amount of the Deposited Item Return Unpaid fee charged by Defendant.

107.    As a result of Defendant's unlawful acts as alleged herein, Plaintiff Arif and the New Jersey Sub-class have been damaged in the amount of the Deposited Item Return fees collected by Defendant from customers with accounts located in New Jersey. Plaintiff Arif and the New Jersey Sub-class are entitled to recovery of their ascertainable losses, treble damages, and reasonable attorneys' fees and costs pursuant to N.J.S.A. §56:8-19.

<u>COUNT V</u>
**VIOLATION OF NEVADA'S DECEPTIVE TRADE PRACTICES ACT ("DTPA"),
NEV. REV. STAT. § 598.0903 *ET SEQ.*
(Plaintiff Ellish on behalf himself and the Nevada Sub-class)**

108.    Plaintiff Ellish repeats and realleges each and every allegation contained in paragraphs 1–107 as if fully set forth herein.

109.    Plaintiff Ellish brings this claim individually and on behalf of the members of the Nevada Sub-class against Defendant.

110.    Plaintiff Ellish maintains a Wells Fargo account located in Nevada, pursuant to the Deposit Agreement.

111.    The Nevada Deceptive Trade Practices Act prohibits any person from making false statements or misrepresentations about goods or services offered to customers or failing to disclose material facts about goods or services offered. *See generally* N.R.S § 598.0903 *et seq*.  THE DTPA prohibits people from engaging in "deceptive trade practice[s]" defined as, among other things, "makes false or misleading statements of fact concerning the price of goods or services for sale or lease"; (NRS § 598.0915(13); "violates a state or federal statue or regulation relating to the sale or lease of goods or services" (NRS § 598.0923(1)(c)); "uses an unconscionable practice in a transaction" (NRS § 598.0923(1)(e), among other things.

112.    An "unconscionable practice" means an act, to the detriment of a consumer that (1) takes advantage of the lack of knowledge or capacity of the consumer to a grossly unfair degree; (2) results in gross disparity between the value received and the consideration paid, in a transaction involving transfer of consideration; or (3) arbitrarily excludes the access of a consumer to a good or service. *See* NRS § 598.0923(2)(b).

113.    Defendant imposed unlawful, unconscionable, and predatory fees on its customers in the form of Deposited Item Return Unpaid Fees, which their customers could do nothing to avoid. By imposing these fees, which provided no service or product to its customers, including Mr. Ellish, and the members the Nevada Sub-class, Defendant engaged in unfair business practice in violation of the DTPA.

114.    Defendant's Deposited Item Return Unpaid Fees — charged in the regular course conducting trade and commerce — constitute deceptive practices and "unconscionable practices" under the DTPA.

115.    Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury

is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

116.    The CFPB – through Bulletin 2022-06 – has determined that Deposited Item Return Unpaid Fees, such as those charged by Wells Fargo, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

117.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Return Unpaid Fees is deceptive and unfair and constitutes a violation of the DTPA.

118.    Plaintiff Ellish and all Nevada Sub-class members sustained actual damages as a result of Defendant's unfair practice. The actual damage is measured by the amount of the Deposited Item Return Unpaid Fees charged by Defendant.  The actual damages sustained by Plaintiff Ellish and all Nevada Sub-class members were caused by Defendant's unfair practice of charging Deposited Item Return Unpaid Fees.  In other words, had Defendant not engaged in the unfair practice of charging Deposited Item Return Unpaid Fees, Plaintiff Ellish and the Nevada Sub-class members would not have sustained damages.

119.    Plaintiff Ellish and the other members of the Nevada Sub-class risk irreparable injury as a result of Defendant's acts and omissions in violation of the Nevada DTPA, and these violations present a continuing risk to Plaintiff Ellish and the members of the Nevada Sub-class and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

120.    As a direct and proximate result of Defendant's violations of the Nevada DTPA, Plaintiff Ellis and the other members of the Nevada Sub-class have suffered injury-in-fact and/or actual damage.

121.     Accordingly, Plaintiff Ellish and the other members of the Nevada Sub-class seek their actual damages, punitive damages, an order enjoining Defendant's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. Nev. Rev. Stat. §598.777.

### COUNT VI
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE § 1750, *ET SEQ.***
**(Plaintiffs Batmadakh Choijin and Dagvador Bayarsaihan on behalf of themselves the California Sub-class)**

122.     Plaintiffs Choijin and Bayarsaihan repeat and reallege each and every allegation contained in paragraphs 1–121 as if fully set forth herein.

123.     Plaintiffs Choijin and Bayarsaihan bring this claim individually and on behalf of the members of the California Sub-class against Defendant.

124.     Plaintiffs Choijin and Bayarsaihan maintained a Wells Fargo account located in California, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

125.     California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

126.     Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

127.     The deposit account that Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class opened with Defendant are "services" as defined in Cal. Civ. Code § 1761(b).

128.     Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class are "consumers" as defined in Cal. Civ. Code § 1761(d).

129.     Defendant imposed unfair, unconscionable, and predatory fees on its customers in the form of Deposited Item Return Unpaid fees, which its customers could do nothing to avoid.

By imposing these fees, which the CFPB has deemed "junk fees," and which provided no service or product to its customers, including Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class, Defendant engaged in an unfair business practice in violation of the CLRA.

130.    Defendant's conduct violates at least the following enumerated CLRA provisions:

a.    Cal. Civ. Code § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and

b.    Cal. Civ. Code § 1770(a)(19): Inserting an unconscionable provision in the contract.

131.    Charging Deposited Item Return Unpaid Fees is a predatory practice that impacts thousands, if not millions, of consumers throughout California and the country, and they disproportionately impact vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Thus, Defendant's actions, as alleged herein, affect the public interest.

132.    These charges, which were automatically debited from consumers' accounts, were unilaterally imposed, are deceptive, unfair, predatory in nature, and unconscionable. The CFPB — through Bulletin 2022-06 — has determined that Deposited Item Returned Fees, such as those charged by Wells Fargo, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

133.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Return Unpaid Fees is deceptive and unfair and constitutes a violation of the CLRA.

134.    As a result of Defendant's actions, Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class sustained actual damages. That actual damage is measured by the amount of the Deposited Item Return Fees charged by Defendant.

135.    On February 5, 2024, Wells Fargo received Plaintiffs' CLRA demand letter, which was sent to Defendant pursuant to Cal. Civ. Code §1782. This letter provided notice of Defendant's widespread practice and violation of the CLRA and demanded that Defendant correct the unlawful and deceptive practices alleged there on behalf of not just Plaintiffs Choijin and Bayarsaihan, but on behalf of the California Sub-class members. Defendant offered an individual refund to Plaintiffs Choijin and Bayarsaihan only, and did not offer any remedy to the Sub-class members. Accordingly, Plaintiffs seek all monetary relief available under the CLRA.

136.    Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class are entitled to actual damages, as well as injunctive relief, reasonable attorneys' fees and costs, punitive damages, and any other relief the Court deems proper, pursuant to California Civil Code § 1780.

<u>COUNT VII</u>
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**BUS. PROF. CODE § 17200,** *ET SEQ.*
**(Plaintiffs Choijin and Bayarsaihan on behalf of themselves and the California Sub-class)**

137.    Plaintiffs Choijin and Bayarsaihan repeat and reallege each and every allegation contained in paragraphs 1–136 as if fully set forth herein.

138.    Plaintiffs Choijin and Bayarsaihan bring this claim individually and on behalf of the members of the California Sub-class against Defendant.

139.    California's Unfair Competition Law (the "UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

140.    Defendant's acts and omissions as alleged herein constitute business acts and practices.

141.    The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

142.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

143.    The UCL expressly provides for injunctive relief and contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, he or she is not entitled to recover compensatory damages for his or her own benefit, but only disgorgement of profits made by the defendant through unfair competition in violation of the statutory scheme, or restitution to victims of the unfair competition.

144.    In addition, as alleged herein, Defendant's conduct violates the UCL because charging consumers "junk fees" that provide no tangible service or benefit to the consumers violates public policy. The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class arising from Defendant's unlawful practices relating to the imposition of the improper, unfair, and predatory fees outweighs the utility, if any, of those practices.

145.    Charging Deposited Item Return Unpaid Fees is a predatory practice that impacts thousands, if not millions, of consumers throughout California and the country, and they

disproportionately impact vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Defendant's unlawful business practices are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class, and the general public. Defendant's conduct damaged Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class as they have collectively been forced to pay millions of dollars in improper fees. Defendant's unlawful acts and practices complained of herein affect the public interest.

146.    Moreover, Defendant's conduct violates the UCL because it was unfair to implement a blanket practice of charging Deposited Item Return Fees to consumers for all returned checks irrespective of the circumstances or any action taken by the accountholder.

147.    Defendant's conduct was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could have reasonably avoided.

148.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class have been charged improper and unlawful Deposited Item Return Fees, which were automatically debited from their accounts, and Defendant has received income, profits, and other benefits, which it would not have received if it had not violated the UCL. Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class suffered an ascertainable loss and actual damages as a result of Defendant's conduct.

149.    Defendant's conduct caused and may continue to cause substantial injury to Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class. Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class have suffered, and may continue to suffer in the future, injury in fact as a result of Defendant's unlawful conduct. Thus, injunctive relief enjoining Defendant's unlawful practices is proper.

150.    Unless the Court grants injunctive relief compelling Defendant to disgorge itself of the ill-gotten gains it realized by charging Deposited Item Return Unpaid Fees and create a constructive trust to provide relief for Plaintiffs Choijin and Bayarsaihan and the members of the California Sub-class, representing the broader public interest, these individuals will continue to suffer the consequences of Defendant's misconduct.

151.    Plaintiffs Choijin and Bayarsaihan, on behalf of themselves and the members of the California Subclass, request that they be awarded all relief as may be available by law, pursuant to Cal. Bus. Prof. Code § 17203.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendant in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as a representative of the Class and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class and Sub-class Members;

B.    Naming Plaintiff Arif as the representative of the New Jersey Sub-class;

C.    Naming Plaintiff Ellish as the representative of the Nevada Sub-class;

D.    Naming Plaintiffs Choijin and Bayarsaihan as the representatives of the California Sub-class;

E.    Declaring that Defendant's conduct violated the laws referenced herein;

F.    Finding in favor of Plaintiffs and the Class and Sub-classes on all counts asserted herein;

G.    Awarding actual, consequential, punitive, statutory, and treble damages;

H.    Awarding applicable pre-judgment and post-judgment interest on all amounts awarded;

I.    For injunctive relief as pleaded or as the Court may deem proper;

J.      For disgorgement and restitution to Plaintiffs and the Class and/or Sub-class members of all monies received or collected from Plaintiffs and the Class and/or Sub-class members and all other forms of equitable relief;

K.      Awarding Plaintiffs and the Class and Subclasses' reasonable attorneys' fees and expenses and costs of suit;

L.      Awarding damages in an amount to be determined at trial; and

M.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all triable issues.


Dated: March 11, 2024                    Respectfully submitted,

                                         **Heidepriem, Purtell,**
                                         **Siegel & Hinrichs, LLP**

                                         **By** _/s/Matthew A. Tysdal_
                                         Scott N.  Heidepriem (scott@hpslawfirm.com)
                                         Matthew A.  Tysdal (matthew@hpslawfirm.com)
                                         Pete Heidepriem (pete@hpslawfirm.com)
                                         101 W.  69th Street, Suite 105
                                         Sioux Falls, SD 57108
                                         (605) 679-4470

                                         **SIRI & GLIMSTAD LLP**

                                         Lisa R. Considine (*Pro Hac Vice to be filed*)
                                         David J. DiSabato (*Pro Hac Vice to be filed*)
                                         Oren Faircloth (*Pro Hac Vice to be filed*)
                                         745 Fifth Ave, Suite 500
                                         New York, NY 10151
                                         Telephone: 212-532-1091
                                         Facsimile: 646-417-5967
                                         Email: lconsidine@sirillp.com
                                         Email: ddisabato@sirillp.com
                                         Email: ofaircloth@sirillp.com

                                         *Attorneys for Plaintiffs and the Proposed Class and*
                                         *Sub-classes*

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Maher Arif, Brad Ellish, Batmadakh Choijin, and Dagvador Bayarsaihan, individually and on behalf of all

**DEFENDANTS**

Wells Fargo Bank, N.A.

**(b)** County of Residence of First Listed Plaintiff   Hudson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Minnehaha
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Heidepriem, Purtell & Siegel, LLP
101 W. 69th St., Suite 105
Sioux Falls, SD 57108

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*      Click here for: Nature of Suit Code Descriptions.

**CONTRACT**

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**

☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
Other:
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**

☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**

☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**

☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**

☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit (15 USC 1681 or 1692)
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)
Brief description of cause:
Class action against Wells Fargo for unlawful business practices

**VII. REQUESTED IN COMPLAINT:**

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
+$5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*      JUDGE _____      DOCKET NUMBER _____

DATE   Mar 11, 2024      SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____